Gee–Kwong CHAN, on behalf of themselves and all others similarly situated; Ying Xu Feng, on behalf of themselves and all others similarly situated; Geng Quan Shan, on behalf of themselves and all others similarly situated; De–Ning Luo, Plaintiffs–Appellants,

v.

Janet RENO, Attorney General of the United States; Thomas J. Schiltgen, District Director of the Immigration & Naturalization Service; Joseph L. Thomas, Director, Western Service Center; Doris Meissner, Commissioner, Immigration & Naturalization Service; Immigration and Naturalization Service; Executive Office of Immigration Review; Madeleine Albright,* Secretary of State of the United States; U.S. Department of State, Defendants–Appellees.

No. 96–15595.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1997.

Decided May 14, 1997.

---

* Madeleine Albright is substituted for her predecessor, Warren Christopher, as Secretary of State. Fed.R.App.P. 43(c)(1).

Eugene C. Wong and Robert G. Ryan, Law Offices of Valencia & Wong, San Francisco, California, for plaintiffs-appellants.

Ethan B. Kanter, United States Department of Justice, Washington, D.C., for defendants-appellees.

Before: WIGGINS, TROTT, Circuit Judges, and ZAPATA,* District Judge.

## OPINION

WIGGINS, Circuit Judge:

The Immigration and Naturalization Service ("INS") denied plaintiffs' applications for adjustment of status under the Chinese Student Protection Act of 1992, Pub.L. No. 102–404, 106 Stat.1969, *reprinted in* 8 U.S.C.A. § 1255 note (West Supp.1997) (hereinafter "CSPA"). Plaintiffs challenged the INS's decision in district court, which dismissed plaintiffs' complaint for failure to state a cause of action. We affirm.

## BACKGROUND

In 1990, after the Chinese government's actions in Tiananmen Square, President George Bush issued an order which protected Chinese nationals against enforced departure from this country until January 1, 1994. *See* Exec.Order No. 12711, 55 Fed. Reg. 13897 (1990), *reprinted in* 8 U.S.C.A. § 1101 note (West Supp.1997). In 1992, Congress passed the CSPA, thereby exempting qualifying Chinese nationals applying for adjustment of status from certain statutory requirements; the CSPA also gives the Attorney General the discretion to waive certain other requirements for one of three reasons. *See* CSPA § 2.

Plaintiffs Gee–Kwong Chan ("Chan"), Yi Xu Feng, De–Ning Luo, and Geng Quan Shan are Chinese nationals who entered the United States on or before April 11, 1990. They sought adjustment to lawful permanent resident status under the CSPA.[1] The INS denied plaintiffs' applications because they had not been "inspected and admitted or paroled" upon entry to the United States, a requirement for adjustment of status under the CSPA. *See* 8 U.S.C. § 1255(a). Chan then moved for reconsideration, citing a recent amendment to the Immigration and

Naturalization Act ("INA") which permitted adjustment of status for certain persons who entered without inspection. The INS denied Chan's motion for reconsideration, ruling that the amendment was not applicable to Chan's application for adjustment of status under the CSPA.

Because INS regulations prohibit an appeal from the denial of an application for adjustment of status, *see* 8 C.F.R. § 245.2(a)(5)(ii) (1996), plaintiffs filed an action in federal district court seeking declaratory and injunctive relief against the INS, the Attorney General, and other named defendants. Plaintiffs alleged that defendants violated the Administrative Procedure Act, the CSPA, § 245(i) of the INA, 8 C.F.R. § 245.10(d), and the equal protection and due process clauses of the Fifth Amendment. Plaintiffs alleged that they represented a class of similarly situated aliens.

Defendants moved to dismiss. The district court granted defendants' motion, finding *inter alia* that the CSPA and § 245(i) did not afford plaintiffs any relief under their circumstances. *See Gee–Kwong Chan v. Reno,* 922 F.Supp. 292 (N.D.Cal.1996). Specifically, the district court concluded that the INS regulations interpreting these statutes were reasonable and consistent with the statutes' meaning. *Id.* at 297–98. Plaintiffs appeal.

## STANDARDS OF REVIEW

■ We review *de novo* whether the district court had subject matter jurisdiction over plaintiffs' complaint. *Yang v. Shalala,* 22 F.3d 213, 215 n. 4 (9th Cir.1994). We also review *de novo* whether the district court should have dismissed plaintiffs' complaint for failure to state a claim upon which relief could be granted. *Mountain High Knitting, Inc. v. Reno,* 51 F.3d 216, 218 (9th Cir.1995). In order for such a dismissal to be proper, "it must appear beyond doubt that the plaintiffs could prove no set of facts which would entitle them to relief on their claims." *Id.*

---

* Hon. Frank R. Zapata, United States District Judge for the District of Arizona, sitting by designation.

1. "The term 'lawfully admitted for permanent residence' means the status of having been law-

fully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws...." *Id.* § 1101(a)(20).

## DISCUSSION

### I.  *Jurisdiction*

■ Defendants assert that the district court lacked subject matter jurisdiction of plaintiffs' claims arising out of the INS's denial of their applications for adjustment of status under the CSPA. Defendants assert that an alien may challenge the denial of his adjustment application during deportation proceedings, which are then subject to administrative appeal and ultimately *de novo* review by the court of appeals. Accordingly, defendants assert that the plaintiffs' claims are not ripe for review because they have not exhausted their administrative remedies.

Although the defendants' argument is appealing, it is contrary to the law of this circuit. We have previously allowed aliens to challenge the INS's denial of their applications for adjustment of status. *See, e.g., Yu Xian Tang v. Reno,* 77 F.3d 1194, 1196 (9th Cir.1996); *Jaa v. INS,* 779 F.2d 569, 571 (9th Cir.1986). Thus, we conclude that the district court had jurisdiction of plaintiffs' case. As a result, we have jurisdiction of this appeal under 28 U.S.C. § 1291.

### II.  *The Statutes and the Regulations*

We begin with the CSPA and § 245(i) of the INA, because plaintiffs' arguments require us to examine both these statutes and the various INS regulations which have been promulgated to enforce these statutes.

### A.  *The CSPA*

The CSPA provides immigration relief for Chinese nationals who otherwise may have been facing deportation. The CSPA exempted qualifying Chinese nationals from several of the requirements for obtaining adjustment to lawful permanent resident status, including (1) the requirement that an alien have an immigrant visa number immediately available, CSPA § 2(a)(3); (2) national quotas, *id.* § 2(a)(4); and (3) § 245(c) of the INA, which makes adjustment unavailable to aliens whose legal status has lapsed at the time of application, *id.* § 2(a)(5). The CSPA defined qualifying Chinese nationals as persons (1) described in President Bush's executive order, that is, persons who were present in the United States at some time between June 5, 1989, and April 11, 1990; (2) who have resided continuously in the United States since April 11, 1990; and (3) who have not been physically present in China for more than 90 days after April 11, 1990. *Id.* § 2(b). The CSPA allowed qualifying Chinese nationals to apply for adjustment for a 12–month period beginning July 1, 1993. *Id.* § 2(e).

### B.  *Section 245(i)*

■ Generally, aliens who entered the country without inspection are ineligible to seek adjustment to lawful permanent status. *See* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General ... to that of an alien lawfully admitted for permanent residence...."). Section 245(i) of the INA provides an exception to this general rule, permitting any alien who entered the country without inspection to seek adjustment of status upon the payment of an increased filing fee *if* they have an immigrant visa "immediately available." *Id.* § 1255(i).

When Congress amended the INA to add § 245(i), it specifically set forth limited effective dates: "The provisions of these amendments to the Immigration and Naturalization Act [adding 8 U.S.C. § 1255(i) ] shall take effect on October 1, 1994 and shall cease to have effect on October 1, 1997." Act Aug. 26, 1994, Pub.L. No. 103–317, § 506(c), 108 Stat. 1766, *reprinted in* 8 U.S.C.A. § 1182 note (West Supp.1997) (hereinafter "Act Aug. 26, 1994").

### C.  *INS Regulations*

In order to implement § 245(i), the INS promulgated a set of regulations which read, in pertinent part, as follows:

(c) *Application period.* An application for the adjustment of status benefits of section 245(i) of the Act may not be filed before October 1, 1994. An application for the adjustment of status benefits of section 245(i) of the Act cannot be granted on or after October 1, 1997....

. . .

(e) *Applications for Adjustment of Status filed before October 1, 1994.* The provisions of section 245(i) of the Act shall not apply to an application for adjustment of status that was filed before October 1, 1994. The provisions of section 245(i) of the Act shall also not apply to a motion to reopen or reconsider an application for adjustment of status if the application for adjustment of status was filed before October 1, 1994. If otherwise eligible for adjustment of status under the provisions of section 245(i) of the Act, the alien may file a new application for adjustment of status, accompanied by the required filing fee, Supplement A to Form I–485, and any additional sum required by section 245(i) of the Act.

8 C.F.R. § 245.10 (1996). Accordingly, under § 245.10(e), an alien whose application for adjustment of status was pending on October 1, 1994 is not eligible for treatment under § 245(i) of the Act absent the filing of a new application with the required filing fees.

### III. *Plaintiffs' Statutory Challenges*

■ Plaintiffs maintain that the INS should have applied § 245(i) to their adjustment applications which were pending when that provision went into effect. Plaintiffs assert that the regulations interpreting § 245(i) are contrary to congressional intent, in that the statute evidences Congress's intent to permit persons like plaintiffs to be eligible for adjustment under the new law.

In order to assess plaintiffs' challenge to the INS's interpretation of these statutes, we follow the doctrine announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron*, we must first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842–43, 104 S.Ct. at 2781–82. "Thus we begin with traditional methods of statutory interpretation." *Pao Yang v. INS*, 79 F.3d 932, 935 (9th Cir.), *cert. denied* — U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996). If Congress has been silent with respect to the specific issue, then "the question for the court is whether the agency's answer is based on a permissible construc-

tion of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. "Only a 'clear showing' of a contrary congressional intent will justify overruling the agency's interpretation of the statute it is charged with administering." *Coronado–Durazo v. INS*, 108 F.3d 210, 211 (9th Cir.1997) (quoting *Castillo–Felix v. INS*, 601 F.2d 459, 465 (9th Cir.1979)).

The eligibility period of the CSPA expired on June 30, 1994. CSPA § 2(e). Section 245(i)'s provisions took effect on October 1, 1994. Act Aug. 26, 1994, § 506(c). The language of § 245(i) itself is entirely prospective; it indicates that aliens who were not lawfully inspected upon entry *may* apply and the Attorney General *may* accept such applications only *if* the applicant pays an increased filing fee. 8 U.S.C. § 1255(i)(1). Congress could have extended the CSPA application period or granted other relief which would have allowed plaintiffs and other CSPA applicants to obtain the benefits of § 245(i). Congress chose not to do so. Moreover, plaintiffs' argument would enable them to avoid the increased filing fee imposed by § 245(i), a result entirely at odds with the statute. Because the eligibility and effective dates are clear, we conclude that aliens who applied for adjustment under the CSPA are not eligible for treatment under § 245(i).

Complicating this analysis, however, is the INS's own contrary interpretation of § 245(i) in an unpublished Board of Immigration Appeals ("BIA") decision, *Matter of Li*, No. A29 800 343 (BIA 1996) (unpublished decision). Like plaintiffs in this case, Li filed an application for adjustment pursuant to the CSPA during the 12–month eligibility period. Also like plaintiffs, Li was ineligible for adjustment at the time he applied because he had entered the country without inspection. During deportation proceedings, Li argued that in light of recently-enacted § 245(i), he was eligible for adjustment. The immigration judge agreed and granted Li's application for adjustment. The BIA affirmed, commenting as follows: "We agree with the rationale of the Immigration Judge, i.e., that at the time of the hearing, the respondent's application was pending and that the respon-

dent is statutorily eligible for relief." *Id.* at 2.

■ An agency interpretation of a statute which has been interpreted inconsistently is entitled to considerably less deference than a consistently held agency interpretation. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987). Nevertheless, we reject the plaintiffs' argument that *Matter of Li* mandates reversal of the district court's dismissal. First, *Matter of Li* was an unpublished disposition; by the INS's own regulations, unpublished decisions carry no precedential weight. *See* 8 C.F.R. § 3.1(g). Moreover, "unpublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference." *De Osorio v. INS,* 10 F.3d 1034, 1042 (4th Cir. 1993); *see also Leal–Rodriguez v. INS,* 990 F.2d 939, 946 (7th Cir.1993) ("We will not bind the BIA with a single non-precedential, unpublished decision any more than we ourselves are bound by our own unpublished orders.").

Second, the fact that the INS has elsewhere adopted a conflicting interpretation of § 245(i) and the CSPA does not necessarily mean that plaintiffs should prevail. Although the INS's interpretation of these provisions may be entitled to less deference as a result of the conflicting interpretation that appears in *Matter of Li,* it is still entitled some deference: "[t]he fact that the agency has from time to time changed its interpretation [of a statute] does not ... lead us to conclude that no deference should be accorded the agency's interpretation of the statute." *Chevron,* 467 U.S. at 863, 104 S.Ct. at 2792. As discussed above, the INS's interpretation of § 245(i) and the CSPA is consistent with the dates of eligibility and effectiveness set forth by Congress. As a result, we conclude that the BIA's unpublished decision in *Matter of Li* does not compel the conclusion that the INS's regulations are invalid.

■ Finally, we reject plaintiffs' argument that the INS abused its discretion when it failed to provide them with notice as required under 8 C.F.R. § 245.10(d), which reads as follows:

*Adjustment application filed on or after October 1, 1994 without Supplement A to Form I–485.* An adjustment of status applicant will be allowed the opportunity to amend an adjustment of status application filed on or after October 1, 1994, to request consideration under the provisions of section 245(i) of the Act, if it appears that the alien is not otherwise ineligible for adjustment status. The applicant will be notified in writing of the intent to deny the adjustment of status application unless Supplement A to Form I–485 and any required additional sum is filed within thirty days of the date of the notice.

Any argument that the INS abused its discretion by failing to follow this regulation is misplaced; this regulation explicitly states that it applies to adjustment applications filed on or after October 1, 1994. Plaintiffs' applications were filed before October 1, 1994.

### IV. *Plaintiffs' Constitutional Challenges*

#### A. *Equal Protection*

■ In their complaint, plaintiffs allege that defendants are violating their Fifth Amendment guarantee of equal protection because they "are treating the plaintiffs ... differently from other aliens who, like the plaintiffs and class members, have entered this country without inspection, have immediate visas available, satisfy the other requirements of section 245(i), and are therefore prima facie eligible for adjustment of status."

The district court rejected this equal protection claim because it concluded that the factual allegation that the plaintiffs had immediate visas available was incorrect.

Under the CSPA, certain Chinese nationals were deemed to have visas available. However, CSPA applies only to Chinese nationals who were "inspected and admitted or paroled" upon entry into the United States. Because these plaintiffs admit that they were not inspected, they do not have visas available under the CSPA. Because they do not have visas available, they are not similarly situated to aliens who do have visas available and their equal protection claim fails.

**1074**

*Gee-Kwong Chan,* 922 F.Supp. at 298. The district court's analysis is correct; plaintiffs are not similarly situated.

However, on appeal, plaintiffs have changed their focus, alleging that the INS regulations treat them differently from two other "similarly situated" groups. First, plaintiffs argue that the INS is treating them differently from adjustment applicants who entered the country without inspection and then filed an application after October 1, 1994. Second, plaintiffs argue that the INS is treating them differently from the adjustment applicants who received adjustment of status in *Matter of Li.*

The first argument has no merit. Plaintiffs gloss over a major point: they are CSPA adjustment applicants. As outlined above, the CSPA gave certain Chinese nationals some advantages over normal adjustment applicants. Aliens who entered without inspection and then filed for adjustment after October 1, 1994 do not receive any such advantages. Nothing in the record indicates that plaintiffs are unable to apply for adjustment under § 245(i), except that they would not obtain the advantages they receive as CSPA applicants.

Plaintiffs' second argument is also meritless. To the extent the BIA's decision in *Matter of Li* was based on an interpretation of the language of the CSPA and § 245(i), it was incorrect. CSPA adjustment applicants are not eligible for treatment under § 245(i). Plaintiffs cannot raise an equal protection argument grounded on the BIA's erroneous interpretation of the law. *Cf. Castillo–Felix v. INS,* 601 F.2d 459, 467 (9th Cir.1979) (concluding that there was no violation of equal protection where the INS had granted relief to a similarly-situated alien in another circuit as required by that circuit's precedent, which was contrary to the law of this circuit). Any other conclusion would create an absurd result: whenever the INS granted an alien relief to which he was not entitled, any future attempts to apply the law correctly would generate an equal protection claim.

*B. Due Process*

Plaintiffs' due process claim alleges violation of 8 C.F.R. § 245.10(d). As discussed above, § 245.10(d) is not applicable to plaintiffs' adjustment claims because their adjustment applications were filed before October 1, 1994. Thus, the district court properly dismissed plaintiffs' due process claim.

For the foregoing reasons, the district court's dismissal of plaintiffs' complaint is AFFIRMED.